May it please the court, my name is Darryl Parker and I represent the plaintiffs and appellants in this action. This is a discrimination case and we believe that the plaintiffs produced direct evidence of discrimination which should have precluded summary judgment. This is a recurring problem at the district court as to what is the level of proof that a plaintiff must produce in order to avoid summary judgment and we contend that when you have direct evidence of discrimination, that is the, I can't wait to get your black ass out of here. That ends the analysis for purposes of summary judgment and the case should go to the jury. Counsel, the statement is clearly direct evidence of ill motive and ill-speaking of a minority. Is it, tell me why that statement is direct evidence of discrimination, that is that they were being, that they were preferring that this was a Gelland, is that her name? Yes. Was, was preferring white tenants over black tenants. Not that she was preferring white tenants over black tenants but that discrimination entered into her thinking process. But at the time she made the statement, the, the Metro Towers had already issued notices of eviction, isn't that correct? Yes. So, so she's only, she's, she's, she's expressing something to which she has a lawful right to do and which there are already measures in place to evict your clients. It, the issue is not whether or not there was a basis for evicting the clients. The issue is not whether or not there was a basis for denying Mr. Milan tenancy. The issue is whether or not discrimination crept into the process and maybe it did and maybe it didn't but whether it did based on the evidence that we have is a jury question. It's not a question that the district court should have decided. Can, is your argument that direct proof of a discriminatory intent can be so sufficient, if you will, that there's no need to go through the McDonnell-Douglas steps? That's correct. That is one of the arguments that I'm making and of course in this case I'm arguing also that if you went through the McDonnell-Douglas steps you would still come out with discrimination. The error that we believe that Judge Martinez made is that he focused on the element of whether or not they were qualified or whether or not Mr. Milan was qualified to rent the premises. But the people who he seeks to compare himself to, he's alleging were not qualified. That there were people who had scores either equal to or lower than he did who were given overrides and were allowed to rent the premises. So qualification doesn't make a difference if your comparators are equally as unqualified as you are. So I think even under the McDonnell-Douglas scheme the case should have gone to the jury. A lot of the analysis in this case is what does that mean? What does the I can't wait to get your black ass comment mean? What does it mean when you have the comment about one of the other co-workers having nigger lips and a black person's ass? Well we don't know what it means. Maybe these are innocent comments. Maybe these are not indicative of discrimination. But maybe they are. And that's why you have to allow a jury to decide the case. And historically in the Ninth Circuit, even with this argument over McDonnell-Douglas, when you have direct evidence of discrimination, even if it's slight, even if it doesn't raise to the level of a preponderance of the evidence, the Ninth Circuit has allowed these cases to go to the jury. And in this case, I think the the judge made a mistake. The case should have gone to the jury. With respect to the the second element, which is the statute of limitations issue, we believe the final act of discrimination was to continue through with the eviction process even after Ms. Breland was aware that there was a mistake or there was some sort of confusion as to whether or not she could apply her last month's rent. That final act of discrimination, in our opinion, extends the statute of limitations period to May 16th, which was the last date that they were in the premises. A hypothetical question. Let's assume there are two tenants in a in a rental unit and you have the same sort of comments that are in this record, including the incident involving the Supersonics basketball player. But in the tenancy, the Treasury agents execute a search warrant. It turns out that the premises are being used to make counterfeit money. Would that survive McDonnell Douglas? In what sense, Your Honor? Well, for my hypothetical, assume that management personnel at my hypothetical unit made the same comments that are in the record here, all of them. The kick your black ass out, the comment made to the co-worker, the actions involving the Seattle Supersonics basketball player, that they're all in the record. But during the tenancy of my hypothetical tenants, Treasury agents go in with a search warrant and it turns out that the premises are being used to make counterfeit money. And the management agency says, that's the reason we're throwing you out. Can the evidence of discriminatory intent in my hypothetical still override a reason for kicking somebody out that's based on violations of the law? It doesn't override it. It just creates a mixed mode of situation where you have two bases for the decision. One being illegal, one being legal. So your position is that I ought to go to a jury, and a jury ought to decide whether the real reason was the counterfeiting or whether it was the discriminatory intent. Every time. That's what Mottorior v. Chessman held. Right, that's the assignment and obligation. Notwithstanding the fact that the woman involved, Mottorior, had been found to defecate the $30,000, which is a pretty good reason to fire someone. Her testimony that she was being fired for racial reasons was determined by our court as indicating that mixed motive defense does not apply to 1981. And goes to the jury. I think you want to say yes. I want to say yes, but my... Say yes because I dissented and I was wrong. There's one last issue I want to bring up before I reserve some of my time for rebuttal. Defense counsel has made a big issue about how the evidence came in and what the quality of the evidence was with respect to... Do we even need to get into that? This is Judge Martinez. He assumed that all of that was admissible, right? For the purpose of rendering summary judgment. You know, when I drafted my opening brief, I made that assumption. But then after seeing counsel's argument in response, it wasn't clear to me whether or not I missed something. The evidence may not have been in an admissible form if you're going to admit it at a summary judgment. But surely the evidence would have been admissible had it been in a form as of testimony of Ms. Davidson, which we could have presented at trial. So if you submit a declaration in support or opposition of summary judgment, that declaration itself is not admissible in court at trial. But the testimony of the person making the declaration would be admissible at trial. Just for purposes of personal knowledge, who was the Seattle Supersonic basketball player? I don't know. You don't know? Okay. I'd like to reserve the rest of my time. Certainly. Ms. Andrews? Good morning. My name is Pam Andrews, and I'm here representing HSC. Is this a little too... You can adjust that if you like. And you can also adjust the height of the podium if you'd like. It's on the left side, I think. The other way. There we go. A little height challenge, sorry. It's a little loud. Feeling wronged to the point where you bring a suit is significant. Being sued and having to defend when you are accused is significant. But the beauty of being in the courtroom is that the rules of evidence apply. So that emotion that is brought in by both sides has to be tempered. And Judge Martinez did that. And that is why when you read his opinion and his opinion on reconsideration, it is very sound and it is very fair. Because what Judge Martinez saw was this is, if we are applying strictly the rules of evidence, there are things here that do not fit within the square corners. But Judge Martinez went beyond that. And Judge Martinez said, if I open those gates just a little bit further, I still look at this and I still find there is not compelling evidence of discrimination. There is not evidence at all. There doesn't have to be compelling evidence of discrimination. There has to be slight evidence of discrimination, according to Mottoyer. Correct. And that was my next sentence, and I apologize. There is not evidence. When we look at this record, and I think Judge Martinez's effort to go through in what I believe to be his first opinion was 20 pages, walking through, trying to explain how he has reached his conclusion based upon the presentation, I do believe it is sound. What we have is, number one, is there or is there not a proper eviction? And this has gone through not only a court, a state court commissioner went up on appeal through Judge Eadie. Judge Eadie affirmed a proper eviction. The eviction for violation of the lease for not paying the criteria for are the individuals involved members of a racial minority? Absolutely. The second question, could they qualify, is absolutely no. But then we go to the next question, which is, is there evidence, direct evidence of discrimination? And what has been offered to the court are three examples. The NBA player, Judge Martinez looked at that information. It is riddled with not admissible, but even despite that, he looked at it. And in fact, that individual was allowed tenancy. So it still goes nowhere. The second example, the comments at an unknown holiday event, unknown in time, unknown in what circumstances, clearly an appropriate comment. But what is the nexus? And that is key and is important when you are looking at, is this discriminatory conduct? The analysis was set forth in Judge Martinez ruling and is sound. The third example of the inappropriate comments, and I am sure this comment is made regarding Mr. Milan leaving the unit. When put in context, there is not evidence of discriminatory actions of treating other individuals, of treating people of color differently. And that is what Judge Martinez looked at. Judge Martinez did not limit himself to simply say, you didn't meet the rules of evidence no more. Judge Martinez looked at everything. Judge Martinez gave everyone a fair shake. And Judge Martinez ruling should be affirmed. Let me ask you a question. The third piece of evidence, which has been recited by counsel regarding Mr. Milan getting out of the And because there is no evidence of dissimilar treatment, more favorable treatment of other persons, we should not consider it? I am not following you. Well, if that is not actually the only reason, I think Judge Martinez I mean, I don't think there has to be a temporal nexus. If the statement of racial animus by the person who took the eviction action comes after the eviction action has started, one can assume, one can infer, a reasonable trier can infer that that racial animus existed before the action took place. So, I don't think the temporal issue is relevant. The next thing is, it doesn't make very much difference whether there is disparate treatment of dissimilar tenants, so long as there is racial animus direct evidence. Is there? I think I understand your question and I believe the answer to that is you are correct. So now, the issue is simply, is the evidence of Ms. Bjelland's statement, related by Ms. Davidson, sufficient evidence under Mottoyer to allow reversal and require a trial of this case? The answer to that is no. Why is that? And that is number one, the statements are inadmissible hearsay and putting that aside, if we put that aside. Let's just take that inadmissible hearsay. Mr. Millan was present at the deposition of Ms. Davidson, true? Yes. He took the deposition. He says that she said these things. Ms. Davidson was an employee of HSC. Ms. Bjelland was an employee of HSC. Why is that not admissible? Why is it hearsay, first of all, under 801 D2? It's not hearsay, it's a representative of the admission of a party litigant. Well, I don't believe she's a party litigant. That's what I learned in Bonds v. USA, where I also dissented. Sorry, I didn't want to interrupt. With respect to whether or not she's a speaking agent of the company? No, not to be a speaking agent. It's a statement made by an employee of a company within the scope of her employment, because she's standing around in the leasing office talking to other employees about business matters, not what hat she's going to wear. Why is that not under 801 D2? Not hearsay. Just simply not hearsay. I believe in the scope of the deposition, Mr. Millan asked the leading question. Was it an objection to a leading question? And quite honestly, you know, I don't actually know. Well, I read it, and there was no objection to the leading question. Had there been an objection to the leading question, there might have been an opportunity to reframe the question. But there wasn't such an objection by Mr. Barber. So let's forget that. We can put that aside. I think so. And we still. So why is it inadmissible again? Well, if it's not hearsay and a leading question objection was not made, why is it inadmissible? To have a statement, the, well, I, you know what, I will give it to you, because I can't pull up the transcript, and I wasn't there. So, and I will just trust that that is what it is, and if there was not an objection, whether or not that was properly submitted in the trial court, that we can even assume that it was. But even if it is properly submitted to the trial court, what the trial court said. Question. Question. Have you ever heard her say, her, that is, Viellon, that she couldn't wait to get my black ass out of the building? No objection. Answer, yes. Now, on summary judgment, that question is ambiguous. Maybe Mr. Millan was describing himself rather than quoting somebody. But on motion of summary judgment, we have to give all intentions in favor of the non-moving party. Certainly. So that's the record. I'll give you that. But that still doesn't get us down the road, because Judge Martinez gave them that. Judge Martinez went beyond the first step. Judge Martinez then analyzed, and I'm looking at, I believe it was page, pages 28 and 29 of his, oh, I'm not, I'm sorry. It was not, that was not his, but he went beyond, and he commented at page 24 of his order on this comment. And he said that, he comments on the deposition, but then he goes further and says he comments that you look at that isolated comment, alleging if you're going to look at that comment, then you must look at it in the view of the context of Ms. Davidson's other statements, which indicate that Ms. Belange did not treat plaintiffs differently from other tenants, and did not treat. He's doing something which juries do all the time. He's reconciling inconsistent statements by a witness, and he's weighing one statement by Ms. Davidson against another statement of Ms. Davidson. But I think that Mr. Parker would say that should be done by the jury. And I would disagree. I do believe that the trial court looked at the evidence before it on summary judgment, and concluded in the context that it did not give rise to a level of racially discriminatory statement. And it did not impact a decision that was made, that had already been made. So you say that you can't simply take one statement out of a deposition, as if the other statement didn't occur, for purposes of summary judgment? I believe when the entire record was presented to the court on summary judgment, it would be improper for the trial court to only consider part of the deposition testimony, and not the testimony in full. And what Judge Martinez attempted to do on this record, and I think did quite eloquently, was to expand and open the parameters of his consideration of all of the information that was presented to him. And based upon the totality of the information presented to him, he found that there was not a discriminatory discrimination in intent, and there was not a discriminatory act. You know, that argument would make perfect sense if what we were dealing with was an appeal from a jury verdict. But we're not. This is summary judgment. The inferences are in favor of the plaintiff. And normally in these cases, if there is some direct evidence of racial animus, it goes to the jury. And in this instance, I disagree that that is evidence of racial animus under the circumstances when put in the totality of the context of the information that was presented on summary judgment, and the context of the information presented, which was in great depth from multiple sources for the court's consideration. Now, you certainly have a good point, because the deposition of Ms. Davidson, Mr. Millan said, okay, now, what about her treatment of African-American tenants and guests? Did you ever observe any inappropriate behavior on Ms. Bejelen's part toward those people? Answer, not to my knowledge. Correct. It directly contradicts what her later testimony was. And I believe that Judge Martinez specifically observed that, and it was specifically briefed. With respect to the statute of limitations, I do believe that the statute of limitations argument is not extended by other acts. What we are looking at is a, I want to get my dates, the notice of denial was February of 06. The filing was March of 09. A three-year statute of limitations from the act runs from the discrete act, and it's not actionable. You can't go backwards. So, I don't believe that there is a valid statute of limitations issue. And I see that I am literally out of time, unless there are any questions from the court. I wanted to make sure I gave you that opportunity. Thank you. Thank you. Mr. Parker? I'll make my rebuttal brief, but I think the district court on a motion for summary judgment is there to evaluate whether or not he's going to give the plaintiff a chance to prove his case. He's going to give him a chance at justice, allow him to allow a jury to decide his case. If you say, on the one hand, Ms. Davison said A, and on the other hand, Ms. Davison said B, you are engaging in an evaluative process. You're engaging in the same process that a jury would engage in. Even if he might decide it that way, that's not his function. His function is to decide whether or not we have any evidence at all that would allow a jury to infer discrimination. And in this case, given the statements, given the other evidence that we've already talked about, that was enough evidence to allow the matter to go to the jury. And the court made a mistake, and you should reverse his decision. Thank you. Thank you, Mr. Parker. Thank both counsel for the argument. That concludes the docket for the week, and the court stands adjourned.
judges: Hawkins, Bybee, Bea